**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ELRETHA JOHNSON, Special Administrator of
the Estate of THOMAS PAULUS JOHNSON,
deceased, CHRISTOPHER DEVILLIERS
LEACH, Special Administrator of the Estate of
BRIGID O'MEARA LEACH, deceased,
FEROZA PATEL, Administrator of the Estate of
FAAIZA PATEL, deceased, YVONNE PETER,
Special Administrator of the Estate of NIGEL
PETER, deceased, MARKUS TAFERNER and
HELMUT TAFERNER, Co-Special
Administrators of the Estates of NORBERT
TAFERNER, deceased, and PAULA
TAFERNER, deceased, MICHAEL
SCHNEIDER, Executor of the Estate of
CATHERINE TILLETT, deceased, LETISIA
WOLFAARDT, Special Administrator of the
Estate of HANS WOLFAARDT, deceased,
HAZEL ZHAKATA, Special Administrator of
the Estate of JACOB MWELA, deceased,
LYNETTE MOYO, Special Administrator of the
Estate of SENZANI MOYO, deceased,
ESTELLE DREYER, Special Administrator of
the Estate of FRANS DREYER, deceased,
SEAN COLLICK and LISA SHEEN, Co-
Administrators of the Estate of PRISCILLA
COLLICK, deceased, and ILSE MATTHEE,
Special Administrator of the Estate of ANTON
MATTHEE, deceased,

          Plaintiffs,

   v.

AIRBUS S.A.S., AIRBUS AMERICAS, INC.,
HONEYWELL INTERNATIONAL,
NORTHRUP GRUMMAN GUIDANCE AND
ELECTRONICS COMPANY, INC.,
MOTOROLA, INC., GENERAL ELECTRIC
CO., GE AVIATION SYSTEMS, LLC, GE
AVIATION SYSTEMS, LTD., GENERAL
ELECTRIC CO.,

        Defendants.

Case No. 11-cv-05182
Judge George W. Lindberg
Magistrate Jeffrey Cole

**<u>JURY TRIAL DEMANDED</u>**

### DEFENDANT GENERAL ELECTRIC COMPANY'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Subject to its affirmative defenses, without waiving any rights, privileges or defenses and without conceding the appropriateness of this forum for resolution of this dispute, Defendant General Electric Company ("General Electric"), by and through its attorneys, Paul Hastings LLP, hereby responds to Plaintiffs' Complaint as follows:

### COUNT I

1.  Plaintiffs and plaintiffs' decedents are citizens and residents of countries other than the United States. Plaintiff Michael Schneider is the Executor of the Estate of Catherine Tillett. Plaintiff Feroza Patel has been appointed Administrator of the Estate of Faaiza Patel by a court in the country of decedent's domicile. Plaintiffs Sean Colick and Lisa Sheehan have been appointed Co-Administrators of the Estate of Priscilla Collick by a court in the country of the decedent's domicile. The other plaintiffs have been appointed Special Administrator of their respective decedents' estates by an Order of this Court.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and therefore denies those allegations.

2.  Defendant Airbus S.A.S. is a corporation and a citizen and resident of France. Defendant GE Aviation Systems, Ltd. is a corporation and citizen and resident of the United Kingdom. Defendant Motorola, Inc. is a U.S. corporation which has its principle place of business in Illinois. The other defendants are U.S. corporations or limited liability corporations which do business in Cook County, Illinois sufficient to subject them to the jurisdiction of this Court.

**ANSWER:**

General Electric admits that it is a U.S. corporation that conducts business in Cook County, Illinois. General Electric states that the conclusion that its contacts with Illinois are "sufficient to subject them to the jurisdiction of this Court" is a legal conclusion; therefore, General Electric makes no response to that allegation. The remaining allegations in Paragraph 2 are directed to defendants other than General Electric; therefore, no response is required. To the

extent that these allegations require a response, General Electric denies the remaining allegations in Paragraph 2.

3.      On May 12, 2010, plaintiffs' decedents were passengers on board a certain Airbus A-330 aircraft ("the accident aircraft") being operated by Afriqiyah Airways as Flight 8U771 from Johannesburg, South Africa to Tripoli, Libya.

**ANSWER:**

General Electric admits that on May 12, 2010, an Airbus A330 aircraft was operated by

Afriqiyah Airways as Flight 8U771 and was scheduled to fly from Johannesburg, South Africa to

Tripoli, Libya. General Electric lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in Paragraph 3, and therefore denies those allegations.

4.      On a date prior to May 12, 2010, defendants Airbus S.A.S. and Airbus Americas, Inc. ("Airbus") designed, manufactured, assembled, and sold the accident aircraft and provided training in the operation of the subject model aircraft to the flight crew of the accident aircraft.

**ANSWER:**

The allegations in Paragraph 4 are directed to defendant(s) other than General Electric;

therefore, no response is required. To the extent that these allegations require a response,

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 4, and therefore denies those allegations.

5.      At the time that the accident aircraft left the custody and control of defendants Airbus, it was defective and unreasonably dangerous in one or more of the following respects, among other defects:

(a)      the Air Data Inertial Reference Units (ADIRU's) on the accident aircraft provided erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's airspeed and angle of attack, to the accident aircraft's flight control computers;

(b)     the ADIRU's failed to filter out erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's airspeed and angle of attack;

(c)     the accident aircraft's flight control computers and related software failed to filter out the erroneous data and spurious signals provided by the ADIRU's;

(d)     the accident aircraft's flight control computers and related software commanded dangerous and improper flight control movements;

(e)     the accident aircraft's flight control computers and related software allowed dangerous and unauthorized flight control movements;

(f)     the engines lacked sufficient power to allow the recovery from a stall in all reasonably anticipated situations;

(g)     the engines experienced uncommanded and non-harmonious surges in power, causing the aircraft to depart from controlled flight;

(h)     the accident aircraft failed to contain any warnings of the above described defects;

(i)     the accident aircraft was difficult to recover from unusual attitudes and such recovery by the flight crews was caused to be delayed.

**ANSWER:**

The allegations contained in Paragraph 5 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations.  To the extent that these allegations require a response, General Electric denies that the accident aircraft's engines "lack[ed] sufficient power to allow the recovery from a stall in all reasonably anticipated situations" and that "the engines experienced uncommanded and non-harmonious surges in power, causing the aircraft to depart from controlled flight."  General Electric lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5, and therefore denies those allegations.

6.      As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the accident aircraft, it was caused to, and did, crash on approach to the Tripoli airport on May 12, 2010 and plaintiffs' decedents were killed.

**ANSWER:**

General Electric states that the allegations in Paragraph 6 are legal conclusions; therefore, General Electric makes no response to those allegations. To the extent a response is required, and to the extent the allegations in Paragraph 6 are directed to General Electric, General Electric denies those allegations and specifically denies that the accident aircraft's engines played any role whatsoever in causing the crash of Afriqiyah Airways Flight 8U771. General Electric lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6, and therefore denies those allegations.

7. Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and therefore denies those allegations.

8. The plaintiff Executor, Administrators and Special Administrators and the other heirs and beneficiaries of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies those allegations.

9. This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 9.

## COUNT II

1-5.    As paragraphs 1-5 of Count II, plaintiffs reallege paragraphs 1-5 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-5 of Count I as though fully set forth herein.

6.    As the direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the accident aircraft which caused the accident aircraft to crash on approach to the Tripoli airport on May 12, 2010, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

**ANSWER:**

General Electric states that the allegations in Paragraph 6 are legal conclusions; therefore, General Electric makes no response to those allegations.  To the extent a response is required, and to the extent the allegations in Paragraph 6 are directed to General Electric, General Electric denies those allegations and specifically denies that the accident aircraft's engines played any role whatsoever in causing the crash of Afriqiyah Airways Flight 8U771.  General Electric lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6, and therefore denies those allegations.

7.    Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 7 are legal conclusions; therefore,

General Electric makes no response to those allegations. To the extent a response is required,

General Electric denies the allegations in Paragraph 7.

8.     This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 8.

## COUNT III

1-4.     As paragraphs 1 through 4 of Count III, plaintiffs reallege paragraphs 1 through 4 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-4 of Count I as though fully set

forth herein.

5.     At all times relevant hereto, defendants Airbus owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling, and selling the accident aircraft and in providing training in the operation of the subject aircraft to the flight crew of the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

**ANSWER:**

The allegations contained in Paragraph 5 are directed to defendant(s) other than General

Electric and contain legal conclusions; therefore, General Electric makes no response to those

allegations. To the extent that these allegations require a response, General Electric lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 5, and therefore denies those allegations.

6.      Defendants Airbus negligently breached their duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

(a)      negligently designed, manufactured, assembled and sold the accident aircraft such that the ADIRU's provided erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's airspeed and angle of attack, to the accident aircraft's flight control computers;

(b)      negligently designed, manufactured, assembled and sold the accident aircraft such that the ADIRU's failed to filter out erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's airspeed and angle of attack;

(c)      negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's flight control computers and related software failed to filter out the erroneous data and spurious signals provided by the ADIRU's;

(d)      negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's flight control computers and related software commanded dangerous and improper flight control movements;

(e)      negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft's flight control computers and related software allowed dangerous and unauthorized flight control movements;

(f)      negligently designed, manufactured, assembled and sold the accident aircraft such that the engines lack sufficient power to allow the recovery from a stall in all reasonably anticipated situations;

(g)      negligently designed, manufactured, assembled and sold the accident aircraft such that the engines experienced uncommanded and non-harmonious surges in power, causing the aircraft to depart from controlled flight;

(h)      negligently designed, manufactured, assembled and sold the accident aircraft such that the accident aircraft failed to contain any warnings of the above-described defects;

(i)      negligently designed, manufactured, assembled and sold the accident aircraft such that it was difficult to recover from unusual attitudes and such recovery by the flight crew was caused to be delayed;

(j)     negligently failed to provide the flight crew of the accident aircraft with sufficient and proper training in the manual flying of the subject model aircraft during initial type qualification; and

(k)     negligently failed to provide the flight crew of the accident aircraft with sufficient and proper training in the manual flying of the subject model aircraft to ensure the flight crew remained proficient in flying the subject model aircraft manually.

**ANSWER:**

The allegations contained in Paragraph 6 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric denies that the accident aircraft's engines "lack[ed] sufficient power to allow the recovery from a stall in all reasonably anticipated situations" and that "the engines experienced uncommanded and non-harmonious surges in power, causing the aircraft to depart from controlled flight." General Electric lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6, and therefore denies those allegations.

7.     As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of the defendants Airbus, the accident aircraft was caused to, and did, crash on approach to Tripoli Airport on May 12, 2010 and plaintiffs' decedents were killed.

**ANSWER:**

The allegations contained in Paragraph 7 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and therefore denies those allegations.

8.      Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 8, and therefore denies those allegations.

9.      The plaintiff Executor, Administrators and Special Administrators and the other heirs and beneficiaries of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 9, and therefore denies those allegations.

10.     This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph

10.

**COUNT IV**

1-4.    As paragraphs 1 through 4 of Count IV, plaintiffs reallege paragraphs 1 through 4 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-4 of Count I as though fully set

forth herein.

5-6.     As paragraphs 5 and 6 of Count IV, plaintiffs reallege paragraphs 5 and 6 of Count III.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 5 and 6 of Count III as though

fully set forth herein.

7.       As the direct and proximate result of one or more of the aforesaid negligent acts and
omissions of defendants Airbus, which caused the accident aircraft to crash on approach
to Tripoli airport on May 12, 2010, plaintiffs' decedents were caused to suffer multiple
and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain
and suffering and severe terror prior to impact and prior to their deaths, and property
damage.

**ANSWER:**

The allegations contained in Paragraph 7 are directed to defendant(s) other than General

Electric and contain legal conclusions; therefore, General Electric makes no response to those

allegations.  To the extent that these allegations require a response, General Electric lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 7, and therefore denies those allegations.

8.       Had plaintiffs' decedents survived, they would have been entitled to bring an action for
damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 8 are legal conclusions; therefore,

General Electric makes no response to those allegations.  To the extent a response is required,

General Electric denies the allegations in Paragraph 8.

9.       This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois
Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 9.

## COUNT V

1-3.    As paragraphs 1 through 3 of Count V, plaintiffs reallege paragraphs 1 through 3 of
        Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4.      On a date prior to May 12, 2010, defendants Honeywell International ("Honeywell") and
        Northrop Grumman Guidance and Electronics Company, Inc. ("Northrop") designed,
        manufactured, assembled and sold the ADIRU's in the accident aircraft.

**ANSWER:**

The allegations contained in Paragraph 4 are directed to defendant(s) other than General

Electric; therefore, General Electric makes no response to those allegations.  To the extent that

these allegations require a response, General Electric lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Paragraph 4, and therefore denies those

allegations.

5.      At the time the ADIRU's in the accident aircraft left the custody and control of
        defendants Honeywell and Northrup, they were defective and unreasonably dangerous in
        one or more of the following respects, among other defects:

(a)     the ADIRU's provided erroneous data and spurious signals, including,
        but not limited to, erroneous data and spurious signals concerning the
        accident aircraft's air speed and angle of attack, to the accident aircraft's
        flight control computers;

(b)     the ADIRU's failed to filter out erroneous data and spurious signals,
        including, but not limited to, erroneous data and spurious signals
        concerning the accident aircraft's air speed and angle of attack; and

(c)     the ADIRU's in the accident aircraft failed to contain any warnings of the above described defects.

**ANSWER:**

The allegations contained in Paragraph 5 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations.  To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5, and therefore denies those allegations.

6.      As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the ADIRU's in the accident aircraft, the accident aircraft was caused to, and did, crash on approach to Tripoli airport on May 12, 2010 and plaintiffs' decedents were killed.

**ANSWER:**

The allegations contained in Paragraph 6 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations.  To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies those allegations.

7.      Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and therefore denies those allegations.

8.      The plaintiff Executor, Administrators and Special Administrators and the other heirs and beneficiaries of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort,

companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies those allegations.

9.      This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 9.

## COUNT VI

1-3.    As paragraphs 1 through 3 of Count VI, plaintiffs reallege paragraphs 1 through 3 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set forth herein.

4-5.    As paragraphs 4 and 5 of Count VI, plaintiffs reallege paragraphs 4 and 5 of Count V.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 4 and 5 of Count V as though fully set forth herein.

6.      As the direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the ADIRU's on the accident aircraft which caused the accident aircraft to crash on approach to Tripoli airport on May 12, 2010, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

**ANSWER:**

The allegations contained in Paragraph 6 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies those allegations.

7.  Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 7 are legal conclusions; therefore, General Electric makes no response to those allegations. To the extent a response is required, General Electric denies the allegations in Paragraph 7.

8.  This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 8.

## COUNT VII

1-3.  As paragraphs 1 through 3 of Count VII, plaintiffs reallege paragraphs 1 through 3 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set forth herein.

4.      On a date prior to May 12, 2010, defendants Honeywell and Northrup designed, manufactured, assembled and sold the ADIRU's in the accident aircraft.

**ANSWER:**

The allegations contained in Paragraph 4 are directed to defendant(s) other than General

Electric; therefore, General Electric makes no response to those allegations. To the extent that

these allegations require a response, General Electric lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Paragraph 4, and therefore denies those

allegations.

5.      At all times relevant hereto, defendants Honeywell and Northrup owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the ADIRU's in the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

**ANSWER:**

The allegations contained in Paragraph 5 are directed to defendant(s) other than General

Electric and contain legal conclusions; therefore, General Electric makes no response to those

allegations. To the extent that these allegations require a response, General Electric lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 5, and therefore denies those allegations.

6.      Defendants Honeywell and Northrup negligently breached their duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

(a)     negligently designed, manufactured, assembled and sold the ADIRU's in the accident aircraft such that the ADIRU's provided erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack, to the accident aircraft's flight control computers;

(b)     negligently designed, manufactured, assembled and sold the ADIRU's in the accident aircraft such that the ADIRU's failed to filter out erroneous data and spurious signals, including, but not limited to, erroneous data

and spurious signals concerning the accident aircraft's air speed and angle of attack; and

    (c)    negligently designed, manufactured, assembled and sold the ADIRU's in the accident aircraft such that the ADIRU's in the accident aircraft failed to contain any warnings of the above described defects.

**ANSWER:**

The allegations contained in Paragraph 6 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies those allegations.

7.    As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendants Honeywell and Northrup, the accident aircraft was caused to, and did, crash on approach to Tripoli aircraft [sic] on May 12, 2010, and plaintiffs' decedents were killed.

**ANSWER:**

The allegations contained in Paragraph 7 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and therefore denies those allegations.

8.    Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies those allegations.

9.      The plaintiff Executor, Administrators and Special Administrators and the other heirs and beneficiaries of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 9, and therefore denies those allegations.

10.     This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph

10.

## COUNT VIII

1-3.    As paragraphs 1 through 3 of Count VIII, plaintiffs reallege paragraphs 1 through 3 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4-6.    As paragraphs 4 through 6 of Count VIII, plaintiffs reallege paragraphs 4 through 6 of Count VII.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 4-6 of Count VII as though fully

set forth herein.

7.      As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendants Honeywell and Northrup which caused the accident aircraft to crash on approach to Tripoli airport on May 12, 2010, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

**ANSWER:**

The allegations contained in Paragraph 7 are directed to defendant(s) other than General

Electric and contain legal conclusions; therefore, General Electric makes no response to those

allegations.  To the extent that these allegations require a response, General Electric lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 7, and therefore denies those allegations.

8.      Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 8 are legal conclusions; therefore,

General Electric makes no response to those allegations.  To the extent a response is required,

General Electric denies the allegations in Paragraph 8.

9.      This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 9.

**COUNT IX**

1-3.    As paragraphs 1 through 3 of Count IX, plaintiffs reallege paragraphs 1 through 3 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4.     On a date prior to June 1, 2009, defendant Motorola, Inc. ("Motorola") designed,
manufactured, assembled and sold the microprocessors in the ADIRU's and flight control
computers in the accident aircraft.

**ANSWER:**

The allegations contained in Paragraph 4 are directed to defendant(s) other than General

Electric; therefore, General Electric makes no response to those allegations.  To the extent that

these allegations require a response, General Electric lacks knowledge or information sufficient

to form a belief as to the truth of the allegations in Paragraph 4, and therefore denies those

allegations.

5.     At the time the microprocessors for the ADIRU's and flight control computers left the
custody and control of defendant Motorola, they were defective and unreasonably
dangerous in one or more of the following respects, among other defects:

(a)     the microprocessors in the ADIRU's in the accident aircraft created and
allowed erroneous data and spurious signals, including, but not limited
to, erroneous data and spurious signals concerning the accident aircraft's
air speed and angle of attack, to be provided to the ADIRU's in the
accident aircraft;

(b)     the microprocessors in the ADIRU's in the accident aircraft prevented
the software in the ADIRU's from functioning properly;

(c)     the microprocessors in the flight control computers in the accident
aircraft created and allowed erroneous data and spurious signals to be
provided to the flight control computers, including, but not limited to,
erroneous data and spurious signals concerning the accident aircraft's air
speed and angle of attack;

(d)     the microprocessors in the accident aircraft's flight control computers
prevented the software in the flight control computers from functioning
properly;

(e)     the microprocessors in the accident aircraft's ADIRU's and flight control computers commanded dangerous and improper flight control movements;

(f)     the microprocessors in the ADIRU's and flight control computers in the accident aircraft allowed dangerous and unauthorized flight control movements;

(g)     the microprocessors in the ADIRU's and flight control computers in the accident aircraft did not contain any warnings of the above described defects.

**ANSWER:**

The allegations contained in Paragraph 5 are directed to defendant(s) other than General

Electric and contain legal conclusions; therefore, General Electric makes no response to those

allegations.  To the extent that these allegations require a response, General Electric lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 5, and therefore denies those allegations.

6.      As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions in the microprocessors in the ADIRU's and flight control computers in the accident aircraft, the accident aircraft was caused to, and did, crash on approach to Tripoli airport on May 12, 2010 and plaintiffs' decedents were killed.

**ANSWER:**

The allegations contained in Paragraph 6 are directed to defendant(s) other than General

Electric and contain legal conclusions; therefore, General Electric makes no response to those

allegations.  To the extent that these allegations require a response, General Electric lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 6, and therefore denies those allegations.

7.      Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 7, and therefore denies those allegations.

8.      The plaintiff Executor, Administrators and Special Administrators and the other heirs and
        beneficiaries of their respective decedents have suffered a loss of support, loss of net
        accumulations, loss of household and other services, loss of care, comfort,
        companionship, guidance and society and mental anguish, sorrow and grief as the result
        of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 8, and therefore denies those allegations.

9.      This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois
        Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 9.

## COUNT X

1-3.    As paragraphs 1 through 3 of Count X, plaintiffs reallege paragraphs 1 through 3 of
        Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4-5.    As paragraphs 4 and 5 of Count X, plaintiffs reallege paragraphs 4 and 5 of Count IX.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 4 and 5 of Count IX as though fully set forth herein.

6.    As the direct and proximate result of one or more of the foregoing defective and unreasonably dangerous conditions of the microprocessors in the ADIRU's and flight control computers in the accident aircraft which caused the accident aircraft to crash on approach to Tripoli airport on May 12, 2010, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

**ANSWER:**

The allegations contained in Paragraph 6 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies those allegations.

7.    Had plaintiffs' decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 7 are legal conclusions; therefore, General Electric makes no response to those allegations. To the extent a response is required, General Electric denies the allegations in Paragraph 7.

8.    This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 8.

## COUNT XI

1-3.    As paragraphs 1 through 3 of Count XI, plaintiffs reallege paragraphs 1 through 3 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set forth herein.

4.    On a date prior to May 12, 2010, defendant Motorola, Inc. ("Motorola") designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft.

**ANSWER:**

The allegations contained in Paragraph 4 are directed to defendant(s) other than General Electric; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, and therefore denies those allegations.

5.    At all times relevant hereto, defendant Motorola owed a duty to plaintiffs and plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and selling the microprocessors in the ADIRU's and flight control computers in the accident aircraft so as not to cause injury to, and the deaths of, plaintiffs' decedents.

**ANSWER:**

The allegations contained in Paragraph 5 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5, and therefore denies those allegations.

6. Defendant Motorola negligently breached their duty of care owed to plaintiffs and plaintiffs' decedents through one or more of the following negligent acts and omissions:

(a) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's in the accident aircraft created and allowed erroneous data and spurious signals, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack, to be provided to the ADIRU's on the accident aircraft;

(b) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's prevented the software in the ADIRU's from functioning properly;

(c) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the flight control computers in the accident aircraft created and allowed erroneous data and spurious signals to be provided to the flight control computers, including, but not limited to, erroneous data and spurious signals concerning the accident aircraft's air speed and angle of attack;

(d) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the accident aircraft's flight control computers prevented the software in the flight control computers from functioning properly;

(e) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the accident aircraft's ADIRU's and flight control computers commanded dangerous and improper flight control movements;

(f) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's and flight control computers in the accident aircraft allowed dangerous and unauthorized flight control movements; and

(g) negligently designed, manufactured, assembled and sold the microprocessors in the ADIRU's and flight control computers in the accident aircraft such that the microprocessors in the ADIRU's and flight control computers in the accident aircraft did not contain any warnings of the above described defects.

**ANSWER:**

The allegations contained in Paragraph 6 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, and therefore denies those allegations.

7.      As the direct and proximate result of one or more of the foregoing negligent acts and omissions of defendant Motorola, the accident aircraft was caused to, and did, crash on approach to Tripoli airport on May 12, 2010 and plaintiff's decedents were killed.

**ANSWER:**

The allegations contained in Paragraph 7 are directed to defendant(s) other than General Electric and contain legal conclusions; therefore, General Electric makes no response to those allegations. To the extent that these allegations require a response, General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and therefore denies those allegations.

8.      Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies those allegations.

9.      The plaintiff Executor, Administrators and Special Administrators and the other heirs and beneficiaries of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 9, and therefore denies those allegations.

10.    This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph

10.

## COUNT XII

1-3.    As paragraphs 1 through 3 of Count XII, plaintiffs reallege paragraphs 1 through 3 of Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4-6.    As paragraphs 4 through 6 of Count XII, plaintiffs reallege paragraphs 4 through 6 of Count XI.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 4-6 of Count XI as though fully

set forth herein.

7.    As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendant Motorola which caused the accident aircraft to crash on approach to Tripoli airport on May 12, 2010, plaintiffs' decedents were caused to suffer multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to impact and prior to their deaths, and property damage.

**ANSWER:**

The allegations contained in Paragraph 7 are directed to defendant(s) other than General

Electric and contain legal conclusions; therefore, General Electric makes no response to those

allegations.  To the extent that these allegations require a response, General Electric lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 7, and therefore denies those allegations.

8.    Had plaintiffs' decedents survived, they would have been entitled to bring an action for
      damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 8 are legal conclusions; therefore,

General Electric makes no response to those allegations.  To the extent a response is required,

General Electric denies the allegations in Paragraph 8.

9.    This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois
      Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 9.

## COUNT XIII

1-3.  As paragraphs 1 through 3 of Count XIII, plaintiffs reallege paragraphs 1 through 3 of
      Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4.     On a date prior to May 12, 2010, defendant General Electric Co., defendant GE Aviation Systems, LLC, and defendant GE Aviation Systems, Ltd. ("General Electric") designed, manufactured, assembled and sold the engines on the accident aircraft.

**ANSWER:**

General Electric admits that, prior to May 12, 2010, General Electric Company, in part,

designed, manufactured, assembled and sold the engines on the subject aircraft. General Electric

denies that GE Aviation Systems, LLC or GE Aviation Systems Limited designed,

manufactured, assembled and/or sold the engines on the subject aircraft, and denies the

remaining allegations in Paragraph 4.

5.     At the time the engines on the accident aircraft left the custody and control of defendants General Electric, they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

     (a)     the engines lacked sufficient power to allow the recovery from a stall in all reasonably anticipated situations;

     (b)     the engines experienced uncommanded and non-harmonious surges in power, causing the aircraft to depart from controlled flight; and

     (c)     the engines did not provide any warnings of the aforesaid defective conditions.

**ANSWER:**

General Electric denies the allegations in Paragraph 5.

6.     As the direct and proximate result of one or more of the aforesaid defective and unreasonably dangerous conditions of the engines of the accident aircraft, the accident aircraft was caused to, and did, crash on approach to Tripoli airport on May 12, 2010 and plaintiffs' decedents were killed.

**ANSWER:**

General Electric denies the allegations in Paragraph 6.

7.     Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 7, and therefore denies those allegations.

8.      The plaintiff Executor, Administrators and Special Administrators and the other heirs and
        beneficiaries of their respective decedents have suffered a loss of support, loss of net
        accumulations, loss of household and other services, loss of care, comfort,
        companionship, guidance and society and mental anguish, sorrow and grief as the result
        of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 8, and therefore denies those allegations.

9.      This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois
        Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 9.

## COUNT XIV

1-3.    As paragraphs 1 through 3 of Count XIV, plaintiffs reallege paragraphs 1 through 3 of
        Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4-5.    As paragraphs 4 and 5 of Count XIV, plaintiffs reallege paragraphs 4 and 5 of
        Count XIII.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 4 and 5 of Count XIII as though

fully set forth herein.

6.     As the direct and proximate result of one or more of the foregoing defective and
unreasonably dangerous conditions of the engines in the accident aircraft which caused
the accident aircraft to crash on approach to Tripoli airport on May 12, 2010, plaintiffs'
decedents were caused to suffer multiple and diverse injuries of both a personal and
pecuniary nature, inclusive of conscious pain and suffering and severe terror prior to
impact and prior to their deaths, and property damage.

**ANSWER:**

General Electric denies the allegations in Paragraph 6.

7.     Had plaintiffs' decedents survived, they would have been entitled to bring an action for
damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 7 are legal conclusions; therefore,

General Electric makes no response to those allegations.  To the extent a response is required,

General Electric denies the allegations in Paragraph 7.

8.     This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois
Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 8.

**COUNT XV**

1-3.     As paragraphs 1 through 3 of Count XV, plaintiffs reallege paragraphs 1 through 3 of
Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4.      On a date prior to May 12, 2010, defendant General Electric Co., defendant GE Aviation
        Systems, LLC, and defendant GE Aviation Systems, Ltd. ("General Electric") designed,
        manufactured, assembled and sold the engines on the accident aircraft.

**ANSWER:**

General Electric admits that, prior to May 12, 2010, General Electric Company, in part,

designed, manufactured, assembled and sold the engines on the subject aircraft.  General Electric

denies that GE Aviation Systems, LLC or GE Aviation Systems Limited designed,

manufactured, assembled and/or sold the engines on the subject aircraft, and denies the

remaining allegations in Paragraph 4.

5.      At all times relevant hereto, defendants General Electric owed a duty to plaintiffs and
        plaintiffs' decedents to use reasonable care in designing, manufacturing, assembling and
        selling the engines on the accident aircraft so as not to cause injury to, and the deaths of,
        plaintiffs' decedents.

**ANSWER:**

General Electric denies the allegations in Paragraph 5.

6.      Defendants General Electric negligently breached their duty of care owed to plaintiffs
        and plaintiffs' decedents through one or more of the following negligent acts and
        omissions:

        (a)     negligently designed, manufactured, assembled and sold the engines on
                the accident aircraft such that the engines lacked sufficient power to
                allow the recovery from a stall in all reasonably anticipated situations;

        (b)     negligently designed, manufactured, assembled and sold the engines on
                the accident aircraft such that the engines experienced uncommanded
                and non-harmonious surges in power, causing the aircraft to depart from
                controlled flight; and

(c)    negligently designed, manufactured, assembled and sold the engines on the accident aircraft such that the engines did not provide any warnings of the aforesaid defective conditions.

**ANSWER:**

General Electric denies the allegations in Paragraph 6.

7.    As the direct and proximate result of one or more of the aforesaid negligent acts and omissions of defendants General Electric the accident aircraft was caused to, and did, crash on approach to Tripoli airport on May 12, 2010 and plaintiffs' decedents were killed.

**ANSWER:**

General Electric denies the allegations in Paragraph 7.

8.    Plaintiffs' decedents left surviving heirs and beneficiaries, including the plaintiff Executor, plaintiff Administrators and plaintiff Special Administrators, for whose benefit this action is brought.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 8, and therefore denies those allegations.

9.    The plaintiff Executor, Administrators and Special Administrators and the other heirs and beneficiaries of their respective decedents have suffered a loss of support, loss of net accumulations, loss of household and other services, loss of care, comfort, companionship, guidance and society and mental anguish, sorrow and grief as the result of the deaths of plaintiffs' decedents.

**ANSWER:**

General Electric lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 9, and therefore denies those allegations.

10.    This action is brought pursuant to 740 ILCS 180/0.01, commonly known as the Illinois Wrongful Death Act.

**ANSWER:**

General Electric admits the existence of the Illinois Wrongful Death Act, but denies that

Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph

10.

## COUNT XVI

1-3.    As paragraphs 1 through 3 of Count XVI, plaintiffs reallege paragraphs 1 through 3 of
Count I.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 1-3 of Count I as though fully set

forth herein.

4-6.    As paragraphs 4 through 6 of Count XVI, plaintiffs reallege paragraphs 4 through 6 of
Count XV.

**ANSWER:**

General Electric incorporates its answers to Paragraphs 4-6 of Count XV as though fully

set forth herein.

7.      As the direct and proximate result of one or more of the foregoing negligent acts and
omissions of defendants General Electric which caused the accident aircraft to, crash on
approach to Tripoli airport on May 12, 2010, plaintiffs' decedents were caused to suffer
multiple and diverse injuries of both a personal and pecuniary nature, inclusive of
conscious pain and suffering and severe terror prior to impact and prior to their deaths,
and property damage.

**ANSWER:**

General Electric denies the allegations in Paragraph 7.

8.      Had plaintiffs' decedents survived, they would have been entitled to bring an action for
damages, and such action has survived them.

**ANSWER:**

General Electric states that the allegations in Paragraph 8 are legal conclusions; therefore, General Electric makes no response to those allegations. To the extent a response is required, General Electric denies the allegations in Paragraph 8.

9.    This action is brought pursuant to 755 ILCS 5/27-6, commonly known as the Illinois Survival Act.

**ANSWER:**

General Electric admits the existence of the Illinois Survival Act, but denies that Plaintiffs are entitled to the relief requested and denies the remaining allegations in Paragraph 8.

## SEPARATE AND AFFIRMATIVE DEFENSES

Without admitting any facts alleged by Plaintiffs, and without assuming the burden of proof as to any defense, General Electric also pleads the following separate and affirmative defenses to the Complaint:

## FIRST AFFIRMATIVE DEFENSE

The Complaint and all claims for relief therein should be dismissed on the ground of *forum non conveniens*.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' damages and the damages of Plaintiffs' decedents, if any, were proximately caused by the acts or omissions of others over whom General Electric had no control or right of control, and/or said acts or omissions were an intervening, superseding, and/or sole, direct and proximate cause, and no alleged act or omission of General Electric was the proximate or contributing cause of Plaintiffs' damages and the damages of Plaintiffs' decedents, if any.

## THIRD AFFIRMATIVE DEFENSE

If Plaintiffs or Plaintiffs' decedents were damaged by products originally designed, manufactured, assembled, inspected, tested or sold by General Electric, those products subsequently were installed, removed, exchanged, altered, modified, retrofitted, repaired, overhauled, remanufactured, improperly maintained or misused by persons and/or entities other than General Electric, and over whom General Electric had no control or right of control, and such installation, removal, change, alteration, repair, modification, retrofitting, overhauling, remanufacturing, improper maintenance or misuse proximately caused and contributed to the events alleged in the Complaint and the resulting damages complained of, if any.

## FOURTH AFFIRMATIVE DEFENSE

Third parties over whom General Electric had no control unforeseeably altered and/or unforeseeably misused the subject aircraft and engines, which was the sole, direct, and proximate cause of the damages, if any, of Plaintiffs and Plaintiffs' decedents.

## FIFTH AFFIRMATIVE DEFENSE

General Electric places in issue the negligence, fault, and responsibility of all persons and entities that have contributed in any degree to the injuries and damages alleged to have been sustained by Plaintiffs and Plaintiffs' decedents.  Judgment against General Electric, if any, should be diminished to an amount that represents General Electric's degree of negligence, fault, or responsibility, if any.

## SIXTH AFFIRMATIVE DEFENSE

The subject aircraft and engines were intended for and sold to a knowledgeable and sophisticated user and/or learned intermediary over whom General Electric had no control.

## SEVENTH AFFIRMATIVE DEFENSE

General Electric complied with all applicable federal, international, and state laws and regulations existing at the time the engines of the subject aircraft were manufactured and all applicable standards for design, inspection, testing, warning and manufacture.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs may lack the capacity and/or standing to bring this action.

## NINTH AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims and available damages may be barred by virtue of prior settlements with respect to Plaintiffs' decedents and/or decedents' estates.

## TENTH AFFIRMATIVE DEFENSE

An award or judgment rendered in favor of Plaintiffs must be reduced by the amount of benefits Plaintiffs received, or are entitled to receive, from any source.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to use reasonable efforts to mitigate their damages, if any.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed because Plaintiffs have failed to join necessary and indispensable parties, including but not limited to the operator of Afriqiyah Airways Flight 771.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred in whole or in part and/or preempted by federal law.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred in whole or in part by res judicata, release, waiver, and/or estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred, in whole or in part, by the applicable statutes of repose.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred, in whole or in part, by the applicable statutes of limitations.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred, in whole or in part, by the doctrine of laches.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred, in whole or in part, by reason of the fact that the subject engines were designed and manufactured in accordance with the state-of the-art at the time of their design or manufacture.

## NINETEENTH AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against General Electric upon which relief can be granted.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because General Electric had no post-sale duty to warn or duty to retrofit the subject engines.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because there was no practical and feasible alternative design that would have prevented the alleged injuries.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the benefits of the design of the subject engines outweigh the inherent risks, if any.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred in whole or in part by Plaintiffs' prior accord and satisfaction with any party or third party for claims arising out of the subject matter of the Complaint.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

In the event Illinois law may be applied, any fault attributable to General Electric is less than 25% of the total fault attributable to Plaintiffs, other defendants, and third party defendants

who could have been sued by Plaintiffs; therefore, General Electric is not jointly liable but only severally liable for its relative degree of fault, if any, pursuant to 735 ILCS 5/2-1117.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

General Electric reserves any and all defenses and rights available to it under the applicable law governing contribution, indemnification and apportionment.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is premature in that it was filed before the investigations into the cause of the accident were complete. General Electric therefore reserves the right to add those affirmative defenses which it deems necessary to its defense during or upon the conclusion of investigation and discovery. General Electric further reserves the right to assert any additional affirmative defenses asserted by another defendant and/or allowed by the law of the jurisdiction found to apply in this case.

## NOTICE OF APPLICABILITY OF THE LAW OF ANOTHER JURISDICTION

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, General Electric hereby gives notice that it intends to raise issues in this action concerning the applicability of the law of other jurisdictions, including but not limited to the law of Libya or other foreign country, to some or all of the claims and defenses stated herein, and reserves the right to assert and plead such other claims and defenses available to them arising out of the application of the substantive laws of another jurisdiction.

## PRAYER FOR RELIEF

WHEREFORE, General Electric prays for judgment against Plaintiffs as follows:

1.      That Plaintiffs take nothing by reason of their Complaint, that the Complaint be dismissed in its entirety with prejudice, and that judgment be entered for General Electric;

2.      That Plaintiffs not be awarded damages;

3.      That General Electric be awarded its reasonable costs and attorneys' fees; and

4.      That General Electric be awarded such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Without conceding any right by Plaintiffs to have this case tried to a jury, General Electric demands trial by jury on all issues so triable.

Respectfully submitted,

Dated:  August 9, 2011

/s/ Sheila A. Sundvall
Sheila A. Sundvall
Christopher F. Allen
PAUL HASTINGS LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois  60606
Tel:  312-499-6000
Fax:  312-499-6100
sheilasundvall@paulhastings.com
christopherallen@paulhastings.com

ATTORNEYS FOR DEFENDANT
GENERAL ELECTRIC COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher F. Allen, hereby certify that on August 9, 2011, I electronically filed the foregoing **Defendant General Electric Company's Answer to Complaint and Affirmative Defenses** with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the attorneys of record at the e-mail addresses on file with the Court.

 /s/  Christopher F. Allen
One of the Attorneys for Defendant
General Electric Company